## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| **ADAM SLOAN, JABARI H. RATLIFF, LARA MEIER, JUANITA GRINER, KOHLTEN MICHAEL ROBINSON, SUSAN HAVENS, TYRICE CHANDLER, ARCTOS GRAY, SHANITA WALKER, KATHLEEN DAVIS, LENA TAYLOR, MARIA VAZQUEZ, KRISTEN REA, TIMOTHY RIEGLING, DIANE LEE FREYBLER, ERIKA K. ABNEY, ANTONIA SANCHEZ, SAMUEL J. CZARNOPYS, JODI MCCLURE, MOLLY HOLMES, NANCY E. PARKER, CATHLEEN M. NIENHUIS, ASHLEY ASH, WILLIAM D. NIENHUIS, SHANNON M. BEAN, TRENTON ROBINSON, CASEY L. OTTE, JERMAYNE WILLIAMS**, and **GORDON DORNBOS,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v | ) ) |
| **TECH GROUP GRAND RAPIDS INC. d/b/a WEST CONTRACT MANUFACTURING**, a Michigan corporation, | ) ) ) ) ) ) |
| Defendant. | ) ) |

CASE NO. 2:24-CV-02454-KNS

HON. KAI N. SCOTT

_____

## MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT

1

## FACTUAL BACKGROUND

### I. Introduction

The Plaintiffs in this action are seeking damages from Defendant for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. section 201 et seq. (hereinafter referred to as "Plaintiffs' Lawsuit"). This matter was originally filed in the United States District Court for the Western District of Michigan by Plaintiff, Adam Sloan, against West Pharmaceutical Services Inc. (ECF No. 1.)  Since the filing of the original Complaint, Defendant Tech Group Grand Rapids Inc. was substituted into this lawsuit in place of West Pharmaceutical Services Inc. after learning that Plaintiffs' employer was technical Defendant Tech Group Grand Rapids Inc. (ECF No. 11.) Thereafter, Defendant filed a motion to transfer this action to the United States District Court for the Eastern District of Pennsylvania (ECF No. 15), which was granted on June 4, 2024 (ECF No. 27).  Plaintiffs' counsel moved for and was granted *pro hac vice* admission in this Court (ECF No. 35) after retaining attorney Joel Ready of Cornerstone Law Firm as local counsel.  On September 8, 2025, Plaintiffs filed their First Amended Complaint, which added twenty-eight additional plaintiffs on an individual basis. (ECF No. 52.)  The First Amended Complaint, the operative complaint in this matter, alleges that Defendant violated the FLSA by failing to pay Plaintiffs the proper overtime rate when calculating their regular rate of pay in connection with various forms of non-discretionary compensation earned in weeks during which they worked overtime hours.

Since the appearance of Defendant's counsel, the parties have engaged in motion practice, notably Defendant's Motion to Stay or Transfer Case to the Eastern District of Pennsylvania (ECF No. 15), attended numerous conferences, exchanged and reviewed relevant pay and timekeeping data to analyze potential damages, and have engaged in lengthy settlement discussions.  After months of settlement discussions, the parties eventually landed on a settlement structure and

agreed to the form of two separate settlement agreements that reflect their negotiated settlement. One of the negotiated settlement agreements is intended for all of the Plaintiffs, except for Plaintiff Adam Sloan, to sign ("General Settlement Agreement").  The other negotiated settlement agreement is intended only for Plaintiff Adam Sloan, who was terminated during the pendency of this litigation ("Sloan Settlement Agreement").  Having reached a settlement agreement acceptable to all Plaintiffs and Defendant, the parties now seek the Court's approval of the General Settlement Agreement and Sloan Settlement Agreement and dismissal of the case with prejudice.

## II.    Settlement Terms and Documents

Plaintiffs submit the following settlement documents for the Court's review, approval, or entry:

Exhibit 1.  Proposed Order Approving FLSA Settlement

Exhibit 2.  Form of General Settlement Agreement

Exhibit 3.  Form of Sloan Settlement Agreement

Exhibit 4.  List of Individual Settlement Payments

Exhibit 5.  Declaration of Counsel C. Christopher Newberg

The gross settlement amount is $55,978.53, which is inclusive of (i) the issuance of monetary payments to Plaintiffs ("Individual Settlement Payments"), (ii) additional payment to Plaintiff Adam Sloan to compensate for additional release language contained in the Sloan Settlement Agreement, (iii) payment for attorneys' fees, and (iv) payment for Plaintiffs' litigation costs expenses. (See Exhibit 2 and Exhibit 3.)

### a.  Individual Settlement Payments

The Individual Settlement Payments are calculated proportionally on each Plaintiffs' alleged damages during the relevant period and are set forth in the List of Individual Settlement

Payments attached as <u>Exhibit 4</u>.[1]  The Individual Settlement Payments will be allocated fifty percent (50%) to back wages (paid via an IRS Form W-2) and fifty percent (50%) to liquidated damages (paid via IRS Form 1099). (<u>Exhibit 2</u> and <u>Exhibit 3</u>.)  In total, the Individual Settlement Payments amount to $13,040.90 of the gross settlement amount.

### b.  Additional Payment to Plaintiff Sloan

Because of his termination during the pendency of this action and his unique relationship to Defendant and this lawsuit, the parties negotiated for Plaintiff Adam Sloan to receive an additional $5,000.00 payment in exchange for the additional release language contained in the Sloan Settlement Agreement. (<u>Exhibit 3</u>.)

### c.  Attorneys' Fees and Costs

Defendant agrees to pay $35,000.00 to Plaintiffs' counsel, Kuiper Kraemer PC, for attorneys' fees incurred to date and attorneys' fees that Plaintiffs' counsel anticipates incurring as part of the settlement approval process. (<u>Exhibit 2</u> and <u>Exhibit 3</u>.) Additionally, Defendant agrees to pay Plaintiff's counsel $2,937.63 to cover Plaintiffs' litigation costs and expenses incurred in this matter.  (*Id.*)

### d.  Release of Claims

By signing the General Settlement Agreement, all Plaintiffs except for Plaintiff Adam Sloan, will be subject to a specific release of only wage-and-hour claims arising between October 13, 2020, through July 18, 2025. (<u>Exhibit 2</u>, sec. 3.)  Pursuant to the Sloan Settlement Agreement, Plaintiff Adam Sloan will be subject to the release of his wage-and-hour claims as well as other employment-related claims he may have against Defendant, subject to certain limitations contained therein.  (<u>Exhibit 3</u>, sec. 5.)

---

[1] The parties opted to attach a list of the Individual Settlement Payments rather than attach each and every individualized General Settlement Agreement.

**LAW AND ARGUMENT**

As an initial matter, the Third Circuit does not require court approval of FLSA settlements. Some judges in this Circuit, including this Court, recently rejected requests for settlement approval and reached the conclusion that court approval is not required. *See Walker v. Marathon Petroleum Corp.*, 2023 WL 4837018, *3 (W.D. Pa. July 28, 2023) (judicial approval is not required for settlement of a bona-fide wage dispute under the FLSA); *Alcantara v. Duran Landscaping, Inc.*, 2022 WL 2703610, at *1 (E.D. Pa. July 12, 2022) (same). Where court approval is sought, the court's role is to ensure that the settlement is a fair and reasonable resolution of a bona fide dispute. *See e.g., See Brown v. Kadence Int'l, Inc.*, 2023 U.S. Dist. LEXIS 49202, at *10 (E.D. Pa. Mar. 23, 2023).

## I. The Settlement is a Fair and Reasonable Resolution of a Bona Fide Dispute.

"To approve a settlement resolving claims under the FLSA, the Court must scrutinize its terms for fairness and determine that it resolves a bona fide dispute." *Bredbenner v. Liberty Travel, Inc.*, No. 09 Civ. 1248 (MF), 2011 WL 1344745, at *18 (D.N.J. April 8, 2011). The purpose of determination is to ensure that the parties are not "negotiating around the clear FLSA requirements" via settlement. *Id*. As a result, the settlement must resolve a bona fide dispute. *See Vidal v. Paterson Car Emporium LLC*, Civ. No. 19-12711, 2023 WL 238825, at *2 (D.N.J. Jan. 18, 2023) ("In light of the stark contrast between the parties' factual positions, the Court finds that their dispute is bona fide.").

Here, the dispute between the Parties centered on whether Defendant failed to pay Plaintiffs overtime wages during their employment with Defendant. At all times, Defendant has disputed its liability on these claims, asserting that either it is not liable for these payments or that the Plaintiffs' claimed damages were excessive. Thus, there was a bona fide dispute between the parties that was

resolved through extensive settlement discussions and negotiations. *Id.*, citing *Hohnke v. United States*, 69 Fed. Cl. 170, 175 (Fed. Cl. 2005).

In addition, the terms of the proposed settlement in this matter are fair. The Parties reached their Settlement after engaging in significant investigation and negotiation, which provided Plaintiffs the opportunity to assess the strengths and weaknesses of their claims and the risks associated with proceeding to trial. *See Alves*, 2012 WL 6043272, at *9 ("[A] district court should consider whether the settlement is proposed by experienced counsel who reached the agreed-upon terms through arms-length bargaining."). Thus, the parties were fully informed of the legal issues and the evidence. *See also In re Gen. Motors Corp.*, 55 F.3d 768, 785 (3d Cir.), cert. denied, 516 U.S. 824 (1995) ("This preliminary determination establishes an initial presumption of fairness when the court finds that ... the negotiations occurred at arm's length ... [and] the proponents of the settlement are experienced in similar litigation...."). The proposed settlement was achieved after arms-length and good-faith negotiations between the parties.

Moreover, the Third Circuit recognizes a strong public policy in favor of settlements, since "they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts." *D.R. by M.R. v. E. Brunswick Bd. Of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997). The policy favoring the settlement of class actions and other complex cases applies forcefully here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming.

Notably, this Court previously approved a settlement involving Defendant and the exact same FLSA allegations in the matter of *Rouse v. West Pharmaceutical Services Inc.*, *et al.*, Case No. 2:23-cv-03798-KNS (E.D. Penn.). As employees of Defendant, Plaintiffs were part of the collective class in *Rouse* and opted out to pursue individual claims in this matter. The Individual

Settlement Payments for each Plaintiff in this matter are exactly twice what they would have received under the Court-approved settlement in *Rouse*. Because the Individual Settlement Payments in this matter are double what this Court found to be reasonable in the *Rouse* matter, there is little question that they are fair and appropriate here.

**II.    The Settlement Distributions are Fair, Reasonable, and Adequate**

As a part of the scrutiny applied to an FLSA settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urb. Cnty. Gov't*, 2008 WL 4724499, at *9 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)). All components of the proposed distribution are proper and reasonable, and the settlement is fair, reasonable, and adequate for Plaintiffs.

**a.    Plaintiffs' Counsel's Request for Fees and Costs is Reasonable and Appropriate in this Case.**

The proposed settlement contemplates payment of $35,000.00 in attorney's fees and $2,937.63 in litigation costs. As the product of a negotiated settlement, the parties do not dispute the reasonableness or appropriateness of the agreed-upon attorneys' fees or costs.

Section 216(b) of the FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." (29 U.S.C. § 216(b).) An award of attorneys' fees to a prevailing plaintiff under section 216(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge. *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

In the Third Circuit, courts evaluate whether an attorney's fee is reasonable through the lodestar formula or the percentage-of-recovery approach. *See, e.g., Ceuric v. Tier One, LLC*, 2019 WL 7493636, at *2 (W.D. Pa. Feb. 11, 2019) (finding that the percentage of the fund method "is

consistent with the standard in this Circuit."); *Robertson v. Enbridge (U.S.) Inc.*, 2021 WL 8342845, at *2 (W.D. Pa. Dec. 17, 2021) (same).

Determining the reasonableness of attorney fees under loadstar formula requires multiplying the number of hours reasonably expended by a reasonable hourly rate." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party seeking attorneys' fees bears the burden of showing that the claimed rates and hours expended are reasonable. See *Hensley*, 461 U.S. at 433 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed."); *United Sates ex rel. Palmer v. C&D Tech., Inc.*, 897 F.3d 128, 139 (3d Cir. 2018) ("In a statutory fees case, the party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable by submitting evidence supporting the hours worked and rates claimed." (cleaned up)). "The party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." *United States ex rel. Palmer*, 897 F.3d at 138 (cleaned up).

Attorney C. Christopher Newberg of Kuiper Kraemer PC has served as lead counsel throughout the duration of this case. (Declaration of Counsel C. Christopher Newberg, Exhibit 5.) Attorney Newberg is a civil litigator practicing out of Kuiper Kraemer PC's office in Grand Rapids, Michigan. (*Id*.) He has been practicing since December of 2014 and is admitted to practice in Michigan, USDC Western Michigan, USDC Eastern Michigan, and the Sixth Circuit Court of Appeals, and was admitted *pro hac vice* in federal courts in New York and Pennsylvania. (*Id*.) Attorney Newberg typically bills at a rate of $400.00 per hour, which is commensurate with his experience, the complexity of the cases he takes on, and the going rates in the greater Grand Rapids, Michigan area. (*Id*.)

Attorney Newberg has recorded 225.7 hours and $2,937.63 in expenses. (*Id*.)  The hours recorded reflect significant pre-litigation investigation efforts and communication with Plaintiffs, extensive data entry and computations to determine potential wage loss figures, complex motion practice, *pro hac vice* admission in this Court, prolonged settlement negotiations, and the assembly and execution of this motion and related settlement documents. (*Id*.)  If this matter were billed on an hourly basis, Attorney Newberg's fee would total $90,280.00, which is substantially more than the attorneys' fees requested herein.

The Third Circuit has endorsed the fee schedule promulgated by Community Legal Services of Philadelphia ("CLS") as "well developed" and "a fair reflection of the prevailing market rates in Philadelphia." *Maldonado*, 256 F.3d at 187–88. The CLS fee schedule was most recently updated for an effective date of January 19, 2023. *See* ECF No. 387-11, Ex. H. Some district courts in the Third Circuit have adjusted the CLS fee schedule rates upwards to account for inflation. See, e.g., *Earley v. JMK Associates*, No. 18-CV-760, 2020 1875535, at *2 (E.D. Pa. Apr. 15, 2020) (McHugh, J.) (adjusting hourly rates by five percent annually).

The hourly rates set forth by the CLS for an attorney with between six and ten years of experience range from $320.00 to $415.00 per hour.  As an attorney with ten years of experience in practice, Attorney Newberg would be at the higher end of that range, which is consistent with his actual hourly billing rate in Michigan.  The proposed $35,000.00 in attorneys' fees equates to an hourly billing rate of $155.07 per hour based on the actual hours logged by Attorney Newberg. This rate is significantly lower than the lowest hourly rate reported by the CLS ($235.00 per hour) for attorneys with less than two years of experience and the lowest hourly rate for paralegals with minimal experience ($190 per hour).  Given the complexity of this type of FLSA dispute, the twenty-month multi-jurisdictional litigation, and the inherent challenges of settling a case with

dozens of individual plaintiffs, this Court should find the requested attorneys' fees to be reasonable and should approve the parties request for $35,000.00 in attorneys' fees and $2,937.63 in litigation costs and expenses.

## CONCLUSION

For the reasons stated above, the parties jointly move this Court for entry of the proposed Order Approving Settlement Agreement, attached hereto as Exhibit 1, which: (i) grants this motion; (ii) approves the General Settlement Agreement and Sloan Settlement Agreement; and (iii) dismisses this action with prejudice and without further costs or fees to any party.

FOR PLAINTIFFS:


By: /s/ C. Christopher Newberg          Dated:  October 10, 2025
    C. Christopher Newberg (*pro hac vice*)
    KUIPER KRAEMER P.C.
    6660 Old 28th Street SE
    Grand Rapids, MI 49546
    (616) 454-3700
    newberg@k2legal.com

    Joel A. Ready, Bar No. 321966
    CORNERSTONE LAW FIRM LLC
    8500 Allentown Pk, Ste 3
    Blandon, PA 19510
    (610) 926-7875
    joel@cornerstonelaw.us